**Manuel MENDEZ and Teresa Lastra de Mendez, Plaintiffs,**

**v.**

**H. I. MAJOR, District Director of the Immigration and Naturalization Service, Defendant.**

No. 63 C 4(2).

United States District Court
E. D. Missouri, E. D.

Dec. 20, 1963.

Forrest Boecker, Ewald & Boecker, St. Louis, Mo., for plaintiffs.

Richard D. FitzGibbon, Jr., U. S. Atty., Stephen H. Gilmore, Asst. U. S. Atty., St. Louis, Mo., for defendant.

MEREDITH, District Judge.

Defendant District Director of the Immigration and Naturalization Service has moved for summary judgment, filing therewith a certified copy of the administrative record involved. Plaintiffs, husband and wife, who are natives and nationals of the Republic of Mexico, entered the United States under the Exchange Visitors Program in 1955. Their amended petition is in two counts. Count 1, basing jurisdiction on Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, seeks judicial review and reversal of defendant's refusal to submit with favorable recommendation to the Secretary of State their application for waiver of the two-year foreign residence requirement of § 212(e) of the Immigration and Nationality Act, 8 U.S. C.A. § 1182(e), based on the alleged exceptional hardship for their United States citizen son. In Count 2, plaintiffs alleging an innocent mistake of fact or law, seek to invoke the equitable powers of the Court to the end that the defendant's department be directed to receive plaintiffs' application for visas as immigrants pursuant to 8 U.S.C.A. § 1101(a) (27) (C) and be ordered to desist from any action toward deportation pending the proposed issuance of their visas as immigrants.

The material facts are not in dispute and we shall refer to them in the discussion of the statutes involved.

In 1955, when plaintiffs entered the United States as exchange visitors, the two-year foreign residence requirement for exchange visitors was not in effect. In 1956 restrictions were imposed by 22 U.S.C. § 1446(b) which provided in substance that no person admitted as an exchange visitor or acquiring exchange-visitor status subsequent to June 4, 1956, should be eligible to apply for an immigrant visa or for a nonimmigrant visa under 8 U.S.C.A. § 1101(a) (15) (H), or for adjustment of status to that of an alien lawfully admitted for permanent residence until it was established that such person had resided in a cooperating country or countries for an aggregate of at least two years following departure from the United States. By this 1956 amendment, it was also provided that upon the request of an interested government agency and the recommendation of the Secretary of State, the Attorney General "may waive such two-year period of residence abroad in the case of any alien whose admission to the United States is found by the Attorney General to be in the public interest * * *".

In 1957 plaintiff Manuel Mendez applied for an extension of his temporary stay as an exchange visitor. The administrative record shows that his application was returned to him by the defendant with written notification that the two-year foreign residence limitation created by the afore discussed 1956 amendment would be applicable to him if he resubmitted the extension application and it was granted. On October 2, 1957, he resubmitted the extension application with an acknowledgment that he had been informed that by so doing he was required to spend two years in a foreign country after his departure from the United States as an exchange visitor and prior to being eligible to apply for an immigrant or nonimmigrant visa or for adjustment of status to that of an alien lawfully admitted for permanent residence. Plaintiff could have returned

to Mexico at that time and would not have been subject to the two-year foreign residence limitation. However, he did not do so but elected to extend his stay under the condition attached. Assuming as fact that no one explained to them at the time of their entry into the United States that they had an option to enter as immigrants pursuant to the provisions of 8 U.S.C.A. § 1101(a) (27) (C) rather than as exchange visitors, and assuming that they, in fact, had such an option, there was no innocent mistake at the time of their entry regarding the two-year foreign residence requirement of exchange visitors since that provision did not exist at the time of entry. Subsequently when the two-year foreign residence requirement became applicable by plaintiff Manuel Mendez' election to apply for an extension, there was no innocent mistake of fact or law on which the second count of the complaint could be based. Plaintiff was informed, acknowledged the conditions under which the application for extension would be received and granted and elected to pursue that course. Consequently, assuming that the second count of plaintiffs' complaint states an equitable claim cognizable in this Court, even though matters there presented are completely outside the scope of judicial review of this administrative determination, there is no innocent mistake of fact or of mixed fact and law which would operate to invoke the equity powers of this Court. Defendant's motion for summary judgment as to Count 2 of the complaint will be sustained.

In 1961 the restrictions imposed by the 1956 amendments were continued in revised and amplified form in the codification of the Exchange Visitor Program in 8 U.S.C.A. § 1182(e). It is the waiver provision of the two-year foreign residence requirement contained in that section [1] with which we are presently concerned under Count 1 of plaintiffs' complaint.

Under the statute, the ultimate determination as to waiver of the two-year foreign residence requirement lies in the discretion of the Secretary of State and the Attorney General. Where the basis of the requested waiver is exceptional hardship to a United States citizen who is a spouse or child of an exchange visitor, the defendant was authorized to request the Secretary of State to recommend waiver after defendant had determined that departure would impose "exceptional hardship".

Plaintiffs have two sons, one a native of Mexico, the other a United States citizen, born at Baltimore, Maryland, on August 31, 1956. In August, 1962, plaintiff Manuel Mendez applied to defendant for a waiver of the two-years' foreign residence requirement under 8 U.S.C.A. § 1182(e) on the basis of the alleged exceptional hardship for his United States citizen son, Fernando. In his application, he stated that Fernando understood only English and that to begin his elementary education in a school in a land which is foreign to him would cause him nervous and emotional disturbances aggravated by the fact that his nine-year old brother would be accepted as a native. The alternative, to leave Fernando in the United States without his parents and in a foster home, would be equally disturbing emotionally. In either case it was stated the son's

---

[1]. In relevant part, 8 U.S.C.A. § 1182(e) * * * "That upon the favorable recommendation of the Secretary of State, pursuant to the request of an interested United States Government agency, or of the Commissioner of Immigration and Naturalization after he has determined that departure from the United States would impose exceptional hardship upon the alien's spouse or child (if such spouse or child is a citizen of the United States or a lawfully resident alien), the Attorney General may waive the requirement of such two-year foreign residence abroad in the case of any alien whose admission to the United States is found by the Attorney General to be in the public interest: And provided further, That the provisions of this subchapter shall apply also to those persons who acquired exchange visitor status under the United States Information and Educational Exchange Act of 1948, as amended."

situation would be aggravated by economic hardship because the plaintiff father, a physician, had concluded that there was no employment opportunity for him in Mexico in the area of his greatest interest, the practice of psychiatry in the treatment of institutionalized, chronic mental cases. Such therapy, it was stated, has scarcely started in Mexico and was limited to a few government hospitals to which the plaintiff-father had applied without success. Although employment opportunity in the plaintiff-physician's special field existed in Canada, he would not find it wise to accept it because a move to a northern climate posed potential health problems for the three members of the family who are natives of a tropical region. Defendant, after considering the plaintiffs' application, informed them in a letter of October 24, 1962, that while the facts set out showed a degree of personal hardship and inconvenience to the United States citizen son, "the degree of exceptional hardship contemplated by the statute has not been established" and, therefore, did not warrant submission to the Secretary of State for a recommendation as to waiver. Subsequently, plaintiffs requested defendant to reopen and reconsider their application for the reasons that the standard of "exceptional hardship" applied was improper by reason of past practices of the defendant and the plain meaning of the statute. They submitted for further consideration the following additional factors: Petitioners are natives of Mexico, a non-quota country. Plaintiffs had received a telegram from Mexico's General Headquarters Cultural Relations that stated:

"14252 Political Constitution United States of Mexico guarantees free entrance and exit to and from the Republic therefore the government does not object stay in that country or change in migratory situation."

Plaintiff Manuel Mendez is a doctor of medicine and the Department of State "is on record as favoring relaxation rather than restriction of rules governing permanent residence of exchange visitors in

the United States, to permit some relief from the chronic shortage of trained medical personnel in our hospitals." Defendant considered the additional evidence but still found that the degree of exceptional hardship contemplated by the statute had not been established and accordingly in a letter to plaintiffs advised them that the decision of October 24, 1962, remained in effect. These additional facts are also referred to in paragraph 8 of Count 1 of plaintiffs' complaint. They are immaterial to our review of the defendant's decision withholding a favorable recommendation to the Secretary of State for the reason that his province with respect to recommendation of waiver extended only to the preliminary determination of "exceptional hardship". 8 U.S.C.A. §§ 1182(e); 8 C.F.R. § 212.7 (c); 22 C.F.R. 63.6(f).

It is further noted that plaintiff made his application on Form I–612, as required by 8 C.F.R. § 212.7. The form contained the following instruction:

"Application on this Form may be submitted only by an alien who believes that compliance with the foreign residence requirement of Section 212(e) of the Immigration and Nationality Act, as amended, would impose exceptional hardship upon his spouse or child who is a citizen of the United States or a lawful permanent resident thereof. An Alien who believes that a United States Government agency may be officially interested in his case and may wish to request a waiver in his behalf should inquire directly of that agency whether it would make such request."

The past practice of defendant in merely transmitting without recommendation applications for waivers based on hardship to the Secretary of State are without significance for it was only with the enactment of 8 U.S.C.A. § 1182(e) in its present form, effective September 26, 1961, that the defendant was authorized to withhold or submit requests for waivers to the Secretary of State. For that reason we have concluded that the inter-

rogatories submitted by plaintiffs are not pertinent or necessary to the determination of the issues presented.

 Thus, the only question before this Court is whether defendant correctly interpreted the standard of "exceptional hardship" contained in the statute which was preliminary to the ultimate discretionary action of the Secretary of State and the Attorney General. Plaintiffs contend in their pleadings that the statute itself provides that the fact in itself that the exchange visitor has a wife or child who is a citizen of the United States establishes a case of "exceptional hardship". Any doubt about such an interpretation is quickly resolved by the legislative history of 8 U.S.C.A. § 1182(e). However, defendant's reference to House Report 721, 87th Cong., 1st Session, in his letter of October 2, 1962, appears to plaintiffs as an attempt "to enforce views of individual Congressmen not incorporated into the enactment". As we view it, the standard "exceptional hardship" present in the statute on its face requires more than the fact of spouse or parent relationship to a United States citizen. The degree of "exceptional hardship" required for the exercise of defendant's determination in making a favorable recommendation to the Secretary of State is clarified by House Report 721, 87th Cong., 1 Sess., p. 121.[2] We, therefore, find that defendant correctly interpreted the standard to be applied and his application of it to the facts submitted by plaintiffs was neither arbitrary, capricious nor an abuse of discretion. Consequently, the motion for summary judgment will be sustained and the complaint will be dismissed with prejudice.

---

2. "The subcommittee hereby reiterates and stresses the views expressed by its chairman (p. 84 et seq.) regarding the fundamental significance of a *most diligent and stringent enforcement of the 2-year foreign residence requirements* of Public Law 555 of the 84th Congress (subsec. (b) of sec. 201 of the United States Information and Educational Exchange Act of 1948, as amended).

"It is noted that by far the largest number of applications for waivers of the above-cited provisions of the law come *from nationals of countries who are in urgent need for expansion and improvement of their technological establishments and their health facilities.* It is believed to be detrimental to the purposes of the program and to the national interests of the countries concerned to apply a lenient policy in the adjudication of waivers *in-* cluding cases where marriage occurring in the United States, or birth of a child or children, is used to support the contention that the exchange alien's departure from this country would cause personal hardship * * *

"In order to strengthen existing law, correct laxities, and enhance the success of the program, the subcommittee recommends reenactment of Public Law 555 of the 84th Congress *in amended form* with the suggestion that the new provisions be made part of section 212 of the Immigration and Nationality Act." (Emphasis a part of the original.)

See also reference to this report in respect to the addition of 8 U.S.C.A. § 1182 (e) added by Pub.L. 87–256, § 109(c), 75 Stat. 535, contained in 1961 U.S.Code Cong. and Adm.News, p. 2759.